UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| P.A.H.E., <br><br> Petitioner, <br><br> v. <br><br> KRISTI NOEM, et al., <br><br> Respondents. | No. 1:26-cv-01164-DJC-JDP <br><br> ORDER |

Petitioner is a noncitizen who entered the United States in March 2022, when he was fifteen years old. Petitioner was released from custody pursuant to the Trafficking Victims Protection Reauthorization Act. Four years later, Immigration and Customs Enforcement officers re-detained him, purportedly pursuant to 8 U.S.C. § 1225(b).

On February 10, 2026, Petitioner filed a Petition for a Writ of Habeas Corpus along with a Motion for Temporary Restraining Order, arguing that he cannot lawfully be detained under this statute and that his present detention violates his due process rights. For the reasons stated below, the Court grants the Petition and orders Petitioner released.

**BACKGROUND**

Petitioner is a nineteen-year-old noncitizen from Guatemala who entered the United States in March 2022, when he was fifteen years old. (Mot. (ECF No. 2) at 11.) Petitioner was initially detained and then transferred to the custody of the Office of Refugee Resettlement pursuant to the Trafficking Victims Protection Reauthorization Act of 2008 ("TVPRA"). (*Id.*; *see also* Pet., Ex. A (ECF No. 1-1) at 1.) The Office of Refugee Resettlement subsequently released Petitioner to a relative. (Mot. at 11.) Immigration and Customs Enforcement ("ICE") then re-detained Petitioner on January 21, 2026, purportedly pursuant to 8 U.S.C. § 1225(b)(2). (*Id.* at 13; Opp'n (ECF No. 10) at 1.)

Petitioner filed a Petition for a Writ of Habeas Corpus (Pet. (ECF No. 1)) and a Motion for Temporary Restraining Order. (ECF No. 2.) Briefing on the Motion for Temporary Restraining Order is now complete. (Mot. (ECF No. 2); Opp'n (ECF No. 10); Reply (ECF No. 11).) The Court ordered this matter submitted without oral argument. (*See* ECF No. 7.)

**DISCUSSION**

**I. Statutory Framework**

Petitioner is correct that he has been unlawfully detained under 8 U.S.C. § 1225. Respondents assert Petitioner qualifies as an "applicant for admission" and thus "is subject to mandatory detention." (Opp'n at 2.) Petitioner counters that he is not subject to mandatory detention under section 1225 but rather to the detention scheme laid out by 8 U.S.C. § 1232. (Pet. ¶¶ 8–9.)

This Court agrees with Petitioner that he is subject to the provisions of section 1232 rather than section 1225(b)(2)'s mandatory detention scheme. As a threshold matter, Petitioner "cannot be simultaneously subject to both § 1225(b)(2) and the TVPRA because their detention schemes are facially incompatible." *F.S.S.M. v. Wofford*, No. 1:25-cv-01518-TLN-AC, 2025 WL 3526671, at *4 (E.D. Cal. Dec. 9, 2025). Section 1225 mandates detention of noncitizens who are "applicant[s] for admission."

2

8 U.S.C. § 1225(b)(2)(A) (providing that a noncitizen "who is an applicant for admission . . . shall be detained"). In contrast, the TVPRA, which governs the detention of unaccompanied noncitizen children, does not mandate detention. Rather, this statute provides that "an unaccompanied [noncitizen] child in the custody of the Secretary of Health and Human Services shall be promptly placed in the least restrictive setting that is in the best interest of the child." 8 U.S.C. § 1232(c)(2)(A). "In making such placements, the Secretary may consider danger to self, danger to the community, and risk of flight." (*Id.*) After the age of eighteen, noncitizens subject to the TVPRA "shall be eligible to participate in alternative to detention programs, utilizing a continuum of alternatives based on the [noncitizen's] need for supervision, which may include placement of the [noncitizen] with an individual or an organizational sponsor, or in a supervised group home." 8 U.S.C. § 1232(c)(2)(B). These statutes are thus plainly incompatible as one mandates detention while the other requires placement in the least restrictive setting and contemplates placement in a variety of release programs.

Respondents argue Petitioner is an "applicant for admission" within the meaning of section 1225 solely because he "entered the United States illegally." (Opp'n at 1.) However, this Court has previously joined numerous other courts within this Circuit in rejecting this broad reading of section 1225. *See Solano Morillo v. Albarran*, No. 1:25-cv-01533-DJC-AC, 2025 WL 3190899, at *3–4 (E.D. Cal. Nov. 15, 2025); *see also Bostock*, 779 F. Supp. 3d at 1257 (finding petitioner likely to succeed on merits of argument that 1225(b)(2)(A) "should be read to narrow mandatory detention under that subsection to noncitizens who are apprehended while seeking to enter the country" (internal quotation marks omitted). Instead, Section 1225 applies solely to those arriving at the border. As this Court has previously explained, Respondents' argument that this term extends beyond the border to reach those who have been present within the United States for a meaningful period of time would

contravene decades of agency practice and render significant swaths of this statute surplusage. *See Solano Morillo*, 2025 WL 3190899, at *3–4.

Instead, Petitioner is subject to the provisions of 8 U.S.C. § 1232. Petitioner entered the United States at age fifteen. (Mot. at 11.) At that time, Petitioner was classified as an unaccompanied child under the custody of the Office of Refugee Resettlement. (*Id.*) Petitioner's Verification of Release form clearly indicates that he was then released into the custody of a sponsor pursuant to the TVPRA. (Pet., Ex. A at 1.) Therefore, Petitioner is clearly subject to section 1232 and section 1225's mandatory detention provision does not apply. *F.S.S.M.*, 2025 WL 3526671, at *4 (holding "Petitioner's classification as an unaccompanied minor and subsequent release under the TVPRA thus indicates he is not an applicant for admission confined to the conditions that classification carries"); *see also Salvador v. Bondi*, No. 2:25-cv-07946-MRA-MAA, 2025 WL 2995055, at *7 (C.D. Cal. Sept. 2, 2025) ("[W]hen Petitioner crossed the border and was apprehended, the government did not classify him as an applicant for admission subject to expedited removal. That Petitioner should now—approximately four years after entering the country and being released by ORR—be treated as an 'applicant for admission' defies logic.").

**A. Due Process**

Petitioner is entitled to relief on his due process claim. The Fifth Amendment Due Process Clause prohibits government deprivation of an individual's life, liberty, or property without due process of law. *Hernandez v. Sessions*, 872 F.3d 976, 990 (9th Cir. 2017). While noncitizens located outside the country are not granted the full protections of the Constitution, the Due Process Clause applies to all "persons" within the borders of the United States, regardless of immigration status. *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001). These due process rights extend to immigration proceedings, including final deportation orders. *Id.* at 693–94; *see Demore v. Kim*, 538 U.S. 510, 523 (2003).

Petitioner has a liberty interest in his continued freedom. As has been detailed by this and numerous other Courts, individuals released from ICE custody have a protected interest in remaining out of custody. *See Lopez v. Lyons*, No. 2:25-cv-03174-DJC-CKD, 2025 WL 3124116, at *3 (E.D. Cal. Nov. 7, 2025); *Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1032 (N.D. Cal. 2025). Petitioner was released from the custody of the Office of Refugee Resettlement in 2022. (Pet. ¶ 74.) For the nearly four years since, Petitioner has remained "at liberty relying on that determination." *F.S.S.M. v. Wofford*, 2025 WL 3526671, at *5. Therefore, Petitioner has a clear liberty interest in his continued freedom, and the Court must determine what process is due.

To determine what process is due, the Court considers three factors: (1) "the private interest that will be affected by the official action[,]" (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards[,]" and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976).

Petitioner has a substantial private interest in maintaining his out-of-custody status. Freedom from imprisonment is at the core of the Due Process Clause. *Zadvydas*, 533 U.S. at 690. Petitioner has remained out of custody for nearly four years. (Pet. ¶ 9.) During this time, Petitioner developed ties to the community. (Mot. at 26.) Petitioner has a substantial private interest in being out of custody, and detention denies him that liberty interest. *See Zadvydas*, 533 U.S. at 690 ("Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects.").

The risk of erroneous deprivation is also considerable. Petitioner was previously released and placed with a sponsor family member pursuant to the TVPRA, meaning the Office of Refugee Resettlement necessarily already determined that Petitioner does not pose a risk of flight or danger to the community based on an

individualized assessment of his circumstances.  *See* 8 U.S.C. § 1232(c)(2) (directing the relevant authorities to consider "danger to self, danger to the community, and risk of flight" in determining the placement of the noncitizens described); *see also Saravia v. Sessions*, 280 F. Supp. 3d 1168, 1177 (N.D. Cal. 2017), *aff'd sub nom. Saravia for A.H. v. Sessions*, 905 F.3d 1137 (9th Cir. 2018) (explaining that, under the TVPRA, a "minor's placement with the sponsor reflects a determination by the federal government that the minor is neither dangerous nor a flight risk").  Further, Petitioner asserts, and Respondents do not contest, that Petitioner has no criminal convictions. (Mot. at 12; *see generally* Opp'n.)  Though Petitioner has dismissed traffic violations and a pending charge for the misdemeanor offense of having threatened to commit a crime (*see* Mot. at 12), Respondents have not argued this nor any other change in circumstances indicates he is a danger to the community.  (*See generally* Opp'n.) Thus, the risk of erroneous deprivation is considerable.  *F.S.S.M. v. Wofford*, 2025 WL 3526671, at *6 (finding risk of erroneous deprivation considerable where "as here, Petitioner was previously released pursuant to a finding that he was neither dangerous nor a flight risk" under the TVPRA).

Finally, Respondents' interest in detention is low.  *Ortega v. Bonnar*, 415 F. Supp. 3d 963, 970 (N.D. Cal. 2019); *see also Hernandez*, 872 F.3d at 994.  Again, Respondents do not argue Petitioner is a flight risk or danger to the community, and the effort and cost required to provide Petitioner with procedural safeguards are minimal.

Having found that Petitioner has a liberty interest and determined, via the *Mathews* factors, that he is entitled to process that should have been afforded to him prior to detention, the Court finds that Petitioner is entitled to relief.  *See Cornejo v. Andrews*, No. 1:25-cv-02062-JLT-HBK, 2026 WL 237748, at *9 (E.D. Cal. Jan. 29, 2026); *F.S.S.M.*, 2025 WL 3526671, at *6; *R.D.T.M. v. Wofford*, No. 1:25-cv-01141-KES-SKO, 2025 WL 2686866, at *6 (E.D. Cal. Sept. 18, 2025).

**CONCLUSION**

As neither party objects to the Court ruling on the merits of the underlying Petition (*see* ECF No. 6; Opp'n at 1), the Court does so here.  Accordingly, IT IS HEREBY ORDERED that:

1. The Petition for Writ of Habeas Corpus (ECF No. 1) is GRANTED as to Count 4.[1]
2. Petitioner's Motion to Proceed under a Pseudonym (ECF No. 3) is GRANTED.
3. Petitioner P.A.H.E. shall be released immediately from Respondents' custody.  Respondents shall not impose any additional restrictions on him, unless they are determined to be necessary at a future pre-deprivation/custody hearing.
4. Respondents are permanently ENJOINED AND RESTRAINED from re-arresting or re-detaining Petitioner absent compliance with constitutional protections, which include, at a minimum, pre-deprivation notice – describing the change of circumstances necessitating his arrest and detention – and a timely hearing.  At any such hearing, the Government shall bear the burden of establishing, by clear and convincing evidence, that Petitioner poses a danger to the community or a risk of flight, and Petitioner shall be allowed to have his counsel present.[2]

////

////

---

[1] In the interests of judicial economy, the Court declines to address the remaining grounds for relief in the Petition.

[2] This burden of proof has been regularly applied by courts reviewing similar cases, and the Court adopts the views of those courts here.  *See, e.g.*, *Pablo Sequen v. Albarran*, --- F.Supp.3d ----, 2025 WL 2935630, at *13–14 (N.D. Cal. Oct. 14, 2025); *Martinez Hernandez v. Andrews*, No. 1:25-cv-01035-JLT-HBK, 2025 WL 2495767, at *13–14 (E.D. Cal. Aug. 28, 2025); *Castellon v. Kaiser*, No. 1:25-cv-00968-JLT-EPG. 2025 WL 2373425, at *11–12 (E.D. Cal. Aug. 14, 2025).

5. The Clerk of the Court is directed to close this case and enter judgment for Petition. This order resolves all pending motions.

IT IS SO ORDERED.

Dated: __**February 17, 2026**__

Hon. Daniel J. Calabretta
UNITED STATES DISTRICT JUDGE

DJC7 – P.A.H.E.26cv01164.hp